Sovereign Camp Woodmen of The World v. Richardson.

Opinion delivered December 24, 1921.

1. Insurance—Waiver and estoppel distinguished.—The distinction between waiver and estoppel in regard to insurance contracts, is that waiver is a voluntary abandonment or surrender of a right while estoppel arises where one is misled to his prejudice by the act or representation of another.

2. Insurance—representation of agent—estoppel.—While a parol executory agreement of an insurance solicitor to waive future breaches of the written agreement is not enforcible, yet where such agent, at the time a policy was taken out, represented that the "war clause" of the policy had not been and would not be enforced, and thereby induced the insured to take out the policy, the insurance company will be estopped to enforce such clauses.

Appeal from Logan Circuit Court, Southern District; *James H. Cochran*, Judge; affirmed.

*T. E. Helm* and *Evans & Evans*, for appellant.

Appellant did not comply with the terms of this contract, by notifying the sovereign clerk and by the payment of an additional premium while serving in the army. This had the effect to merely suspend the operation of the contract, and did not render it void. 138 Ark. 442. However, the failure to comply with the conditions of his contract is a bar to any claim thereunder during this period. The policy provided against the waiver of any of the conditions of the policy by any officer, agent, etc., and such provisions have been uniformly upheld. 58 So. 100; L. R. A. 1915-E 152; 4 L. R. A. (N. S.) 421; 183 U. S. 308;

180 Pac. 2; 40 S. W. 553, etc.   The power to make by-laws for fixing the duties of members, etc., is expressly recognized by our statute, Acts 1917, act 462.   On becoming a member of the order, Richardson agreed to be bound by such laws.   Even conceding that Newberry made the statement ascribed to him, it was not such a positive statement that a prudent man could rely absolutely upon it.   The contract of insurance is the measure of the rights of one and the obligations of the other party (71 Ark. 295) and relief must be granted, if at all, according to its terms (52 Ark. 201).   Not against public policy to make exemptions such as in this case.   138 Ark. 442.

The war clause has been consistently upheld by the various courts.   106 S. E. 185; 181 N. W. 819; 230 S. W. 540; 106 S. E. 32; 107 S. E. 177; 89 Sou. 58.

*Kincannon & Kincannon,* for appellee.

Appellant is estopped by the action of its agent Newberry to claim a forfeiture.   It was in reliance upon such statement that deceased joined the order.   142 Ark. 132; 127 Ark. 133.   There being a conflict in the testimony upon the question of waiver, it was for the jury to settle the matter.   109 Ark. 35.   A verdict will not be disturbed where there is evidence legally sufficient to support it.   113 Ark. 471; 131 Ark. 362.   The same is true of findings by the court.   89 Ark. 321; 93 Ark. 548; 111 Ark. 38; 113 Ark. 400.

Wood, J.   The appellant is a mutual benefit society doing business in this State.   Farrar Newberry was deputy manager of appellant in this State on March 16, 1918.   His duties were organizing new camps, reviving old camps, and soliciting new members.   On the day mentioned he was at Booneville, Arkansas, for the purpose of initiating a class of new members, and on that day a class was initiated into the order at his solicitation and under his direction, of which James W. Richardson was a member.   Newberry was not an officer of the Sovereign Camp which has its domicile at Omaha, Nebraska.   On April 3, 1918, the appellant

issued to James W. Richardson a benefit certificate in which his wife, Winnie May Richardson, the appellee, was the beneficiary, insuring the life of Richardson for the sum of $1,000. The constitution and by-laws of the order are made a part of the contract of insurance, and, among others, the following provision was a part of the contract of insurance:

"In the event the holder of this certificate shall die while serving in any branch of the United States army or navy, either as an officer or enlisted man, outside of the boundaries of the United States of America, then the amount due under this certificate shall be such proportion of the amount thereof as the period he has lived since becoming a member bears to his expectancy of life at the time of becoming such member, determined by the National Fraternal Congress Table of Mortality; provided that, should the holder of this certificate so desire, he may within thirty days after entering the service in any branch of the United States army or navy as an officer or enlisted man, notify the sovereign clerk at the home office of the society, Omaha, Nebraska, United States of America, that he has entered such service of the United States of America, and pay in advance to the sovereign clerk, for the society, the sum of $37.50 per one thousand dollars insurance per annum in addition to the regular assessment prescribed by section 56 of the constitution and laws of the Sovereign Camp of the Woodmen of the World; and upon so doing at the death of the member, or as soon thereafter as possible, the amount prescribed in this certificate shall be paid to his beneficiary or beneficiaries."

The contract also contained a receipt signed by Richardson acknowledging that he had read the benefit certificate, and also a provision that Richardson would pay all the assessments and dues at such time and in such manner as were required by the constitution and

laws of the order, and, in default thereof, his contract was rendered null and void.

Richardson enlisted in the United States army May 27, 1918, and went to France where he was killed in battle November 4, 1918. He did not notify the sovereign clerk that he had enlisted in the army and did not pay the additional premium required by the contract to keep his insurance alive while he was engaged in the military service beyond the bounds of the United States. The appellee and her father paid his monthly dues regularly until the death of Richardson. These dues were paid to the clerk of the local camp regularly as they became due. Neither the local camp clerk or the consul commander of the local camp informed the appellee or the father of Richardson at the time of the payment of the monthly assessment that any additional sum was necessary in order to keep the policy alive. At the time Richardson was initiated into the order, Newberry, in response to inquiries, told the members of the class that the provision of the contract requiring the payment of an additional premium of $37.50 for the increased risk of military service had not been enforced, and he did not think it would be necessary to enforce it; that there was nothing to that; that it would not bother the members then being initiated.

The appellee instituted this action against the appellant on the benefit certificate to recover the sum of $1,000. The appellant denied liability except for the sum of $13.50, the amount shown and conceded to be due under the policy if force were given to the war risk clause. Substantially the above facts were developed at the trial. The court, among others, instructed the jury as follows: "If you find from a preponderance of the evidence that witness Newberry stated to T. M. Riley and Riley stated to James W. Richardson that there would be no extra dues or assessments charged for entering the army, and that statement was made to induce Richardson to join the lodge and take out in-

surance in defendant's company, and said statement did induce the said James W. Richardson to join the lodge and take out insurance, then the company would be estopped from setting up a failure of Richardson to pay additional dues or assessments as a defense to this action, and if you so find, your verdict should be for the plaintiff for the sum of $962.50. If you do not so find from a preponderance of the evidence, you should find for the defendant.''

The appellant duly excepted to the ruling of the court in giving the above instruction and offered prayers for instructions to the effect that the undisputed evidence showed that the ''war clause'' of the contract was in force, and that the jury should return a verdict in favor of the appellant. The trial resulted in a judgment in favor of the appellee in the sum of $962.50, from which is this appeal.

This issue as to whether or not the ''war clause'' of the policy had been waived at the time of the death of Richardson is settled by the recent decision of this court in *Sovereign Camp W. O. W.* v. *Peaugh,* 150 Ark. 176. The facts here with reference to the failure to notify the sovereign clerk that Richardson had entered the military service of the United States and had failed to pay in advance the additional premium of $37.50 for the war risk are precisely similar in essential particulars to the facts of the above case. Therefore, if there were nothing more in this case than the simple issue of waiver, the cause would have to be reversed under the ruling in the above case.

But the testimony in the present case was sufficient to justify the court in sending to the jury the issue as to whether or not appellant was estopped by the conduct of its agent, Newberry, from setting up the failure of Richardson to pay the additional premium called for by the war clause, in defense of this case. In the recent case of *Sovereign Camp W. O. W.* v. *Newsom,* 142 Ark. 132, in the opinion on rehearing at page 157,

in discussing the difference between the terms "waiver" and "estoppel," we quoted from the opinion of Judge CHILTON, speaking for the Supreme Court of Texas, among other things as follows: "Waiver is the voluntary surrender of a right; estoppel is the inhibition to assert it from the mischief that has followed. Waiver involves both knowledge and intention; an estoppel may arise where there is no intention to mislead.    *    *    * Waiver involves the acts and conduct of only one of the parties; estoppel involves the conduct of both. A waiver does not necessarily imply that one has been misled to his prejudice, or into an altered position; an estoppel always involves this element.    *    *    * Estoppel arises where, by the fault of one party, another has been induced, ignorantly or innocently, to change his position for the worse in such manner that it would operate as a virtual fraud upon him to allow the party by whom he has been misled to assert the right in controversy." The terms "waiver" and "estoppel" are often used interchangeably as if they were convertible terms, meaning the same thing. But such is not the case, and a failure to observe this clear distinction between them often leads to confusion. On the issue of estoppel, the present case under the facts comes well within the doctrine announced in the opinion on rehearing in *Sovereign Camp W. O. W.* v. *Newsom, supra,* and well within the general doctrine which has been announced in many decisions of this court, which was well expressed by Chief Justice HILL, speaking for the court in the case of *People's Fire Ins. Assn.* v. *Goyne,* 79 Ark. 315-326, as follows: "When a person does an act or makes a representation which leads another person to a certain course of conduct which he would not otherwise have pursued, the party causing this action is estopped to take any advantage of anything contrary in fact to his misleading conduct or misrepresentation." See also *Grand Lodge A. O. U. W.* v. *Davidson,* 127 Ark. 133.

This case is clearly distinguishable from the case of *Home Fire Ins. Co.* v. *Wilson,* 109 Ark. 324, and all such cases where it is held that the executory agreement of the agent of the insurance company to waive future breaches, if such occur, is not enforceable. Here the facts warrant a finding that, before the contract of insurance was entered into, and as an inducement to Richardson to enter into the contract, Newberry represented that the "war clause" of the policy had not been, and would not be, enforced; that there was nothing to that clause; "it would not bother" the members that were then being initiated. The jury might have found that Richardson, but for such representation, would not have entered into the contract. In all such cases as this where the agent, having express or apparent authority to take the application and initiate members into the appellant society, makes false representations which induce the members to join the order and which he otherwise would not have done, then the society, through its agent making such false representation, will not be heard afterwards to controvert their truth. For to do so would enable it to take advantage of its own wrong and perpetrate a fraud upon its members by installing them into the order and collecting dues from them upon false representations. The doctrine of estoppel, as announced in *Sov. Camp W. O. W.* v. *Newsom, Home Fire Ins. Assn.* v. *Goyne, supra,* and other cases, is clearly applicable to the facts of this record. That issue was correctly submitted to the jury under the court's instructions. There is no error in the rulings of the trial court, and its judgment therefore must be affirmed.

McCULLOCH, C. J., (dissenting). An express waiver is the voluntary surrender of a right with knowledge of all the facts affecting the assertion of that right. Implied waiver is but another name for estoppel by inconsistent or misleading conduct. 7 Cooley's Brief on Insurance, p. 2462.

If Mr. Newberry made the statement attributed to him (which I do not deem it necessary to discuss), there is still no element of estoppel or implied waiver involved, for his conduct and statement only amounted to an agreement that the society would not enforce the so-called "war clause." If the statement amounted to anything at all, it was an express waiver, and, if it be enforced, it is tantamount to permitting a soliciting agent of such society to waive, in advance, an express provision of the by-laws. An implied waiver or estoppel by misleading conduct must, in order to be effective, relate to a present or past incident, for if it relates to future conduct it is necessarily promissory in its effect. *Home Fire Ins. Co.* v. *Wilson,* 109 Ark. 324. This distinction is clearly pointed out in the decision of the Supreme Court of the United States in *Insurance Company* v. *Mowry,* 94 U. S. 544. It was there claimed that an agent of the insurance company had made statements to the assured before the issuance of the policy in conflict with the recitals of the policy itself with respect to the method of payment of premiums, and this was asserted as a defense. Mr. Justice Field, speaking for the court, said:

"The only case in which a representation as to the future can be held to operate as an estoppel is where it relates to an intended abandonment of an existing right, and is made to influence others, and by which they have been induced to act. An estoppel cannot arise from a promise as to future action with respect to a right to be acquired upon an agreement not yet made. The doctrine of estoppel is applied with respect to representations of a party, to prevent their operating as a fraud upon one who has been led to rely upon them. They would have that effect if a party who, by his statements as to matters of fact, or as to his intended abandonment of existing rights, had designedly induced another to change his conduct or alter his condition in reliance upon them, could be permitted to deny the truth of his statements, or enforce his rights against his declared intention of aban-

donment. But the doctrine has no place for application when the statement relates to rights depending upon contracts yet to be made, to which the person complaining is to be a party. He has it in his power in such cases to guard in advance against any consequences of a subsequent change of intention and conduct by the person with whom he is dealing. For compliance with arrangements respecting future transactions, parties must provide by stipulations in their agreements when reduced to writing. The doctrine, carried to the extent for which the assured contends in this case, would subvert the salutary rule that the written contract must prevail over previous verbal arrangements, and open the door to all the evils which that rule was intended to prevent.''

In the case of *McCoy* v. *Northwestern Mutual Relief Association*, 92 Wis. 577, Judge Marshall, speaking for the court, said:

''After a loss accrues, an insurance company may, by its conduct, waive a forfeiture; or by some act before such a loss it may induce the insured to do or not to do some act contrary to the stipulations of the policy, and thereby be estopped from setting up such violation as a forfeiture; but such conduct, though in conflict with the terms of the contract of insurance and with knowledge of the insured and relied upon by him, will not have the effect to broaden out such contract so as to cover additional objects of insurance or cause of loss. To illustrate the principle here laid down, a policy of insurance against loss by fire cannot have ingrafted upon or added to it, by way of estoppel or waiver, provisions for insurance against loss by any other cause; and no more can a policy of life insurance, expressly limited to payment of a sum of money in the event of death from causes other than suicide or self-destruction, be broadened out by the application of the law of waiver or estoppel so as to cover the cause excluded under the contract. While a forfeiture of benefits contracted for may be waived, the doctrine

of waiver or estoppel cannot be successfully invoked to create a liability for benefits not contracted for at all.''

The effect of the decision of the majority is to say that a soliciting agent of a mutual benefit society in this State may abrogate one of the by-laws of the society by a statement to a prospective member that the by-law had not been, or would be, enforced. In other words, the effect is to hold that such an agent can do indirectly by a false statement what he has no authority to do directly.

I have not been able to find any case where the doctrine of estoppel has been applied under facts similar to those in the present case. No authority to that effect is cited in the opinion of the majority. Mr. Newberry was not a general officer of the governing body of the society, but I think it is unimportant what position he occupied, for it seems to me that even the chief officer of the society did not have authority to abrogate the by-laws by a mere statement with respect to the intenion of the society not to enforce them.

SMITH, J., concurs.