SOVEREIGN CAMP WOODMEN OF THE WORLD *v.* PEARSON.

Opinion delivered October 23, 1922.

1. INSURANCE—BENEFIT SOCIETY—ESTOPPEL TO DENY REINSTATEMENT OF MEMBER.—Where a member of a fraternal benefit society, failing to pay dues in January and reported in February as suspended, thereafter paid dues for January, February and March, without complying with the by-laws as to reinstatement, and the dues were remitted to the sovereign clerk, and, though the receipts stated that the dues were held in trust until compliance, receipts were subsequently given for the April and May dues, not containing such provision, and they were likewise forwarded to the sovereign clerk, who, with knowledge of the conditions, retained the payments until after the member's death in June, the society was estopped to insist on a forfeiture.

2. INSURANCE—CUSTOM TO WAIVE COMPLIANCE WITH BY-LAWS.—
Where the local camp of a fraternal benefit society had author-
ity under by-laws to establish a camp fund and to use it in
whatever manner it deemed proper, and it followed. the custom
of paying delinquent dues of members and permitting such mem-
bers to pay at their convenience, without complying with a by-
law. as to reinstatement only on furnishing a certificate of good
health, the society was estopped to insist. on a forfeiture be-
cause such health certificate was not required from a reinstated
member.

Appeal from Logan Circuit Court; *George W. Clark,*
Judge; affirmed.

*T. E. Helm,* for appellant.

The deceased was not reinstated after being sus-
pended simply by paying the dues, without furnishing
the health certificate required by the by-laws of the order.
133 Ark. 411. He was presumed to know the laws of the
order and the limitations of the powers of its officers
and subordinate lodges. 104 Ark. 538. The receipt
issued to him upon the payment of dues after becoming
delinquent put him on notice that he must comply with
the laws. Acceptance of the dues did not estop the ap-
pellant from showing that the deceased was not in good
health at the time of the payment. 80 Ark. 423. A sus-
pended member must show he is in good health before he
is entitled to reinstatement. 15 Colo. App. 538; 107
Ga. 115; 85 N. W. 160; 78 Miss. 525; 119 Mo. App. 222;
66 Co. 834, etc. The local clerk could not waive the re-
quirements of the certificate and of the constitution and
laws. There was no evidence showing any manner of
waiver, or upon which any claim of estoppel can be
based against the right of appellant to insist upon the
enforcement of this provision of its laws. Similar pro-
visions are uniformly upheld. 151 N. W. 692; 114 N.
Y. S. 480; 89 Atl. 301; 63 So. 571; 80 S. E. 545; 47
Atl. 257.

The undisputed facts show that the insured did not
remain in good health for 30 days after the attempted
reinstatement, and there can be no liability,

*W. P. Beard, J. B. Reed, T. C. Trimble, T. C. Trimble Jr.,* for appellee.

By reason of the custom established by the local clerk in accepting dues in arrearages without further action, the appellant is estopped from claiming a member suspended. 201 S. W. 800; 219 S. W. 759; 144 U. S. 36 L. Ed. 496; 109 N. W. 1099; 68 Neb. 660.

Appellant is estopped by reason of the creation of a local camp fund under the supervision of the Sovereign Camp, and establishing a custom of paying therefrom dues of its members. 219 S. W. 759; 2 May on Ins. 361. The following cases hold to the rule that a forfeiture may be waived by action of subordinate lodges or their officers acting within the scope of their authority, regardless of the manner provided by the by-laws for restoring members to good standing: 163 U. S. 289; 126 Ill. App. 15; *Id.* 439; 236 Ill. 113; 135 Iowa 88; 127 N. W. 869; 48 Hun 137; 112 App. Div. 708, 98 N. W. Supp. 974; 57 S. C. 16.

The acceptance of dues in arrears and reporting them to the Sovereign Camp without requiring health certificate, created a waiver and estoppel. 135 Iowa 88; 69 Minn. 236; 102 Mo. App. 377; 95 Mo. App. 233.

WOOD, J. The appellant is a mutual fraternal benefit society duly incorporated under the laws of Nebraska, with its home office in Nebraska, and doing business in this State. It issued to one Sam P. Pearson its certificate or policy insuring his life in the sum of $1,000 in favor of his wife, the appellee, who is named as beneficiary in the policy. Pearson joined the society on October 30, 1905. He failed to pay his monthly installment of dues for the month of January, 1920, and in consequence thereof, under the by-laws of the society, which were a part of the contract of insurance, he became suspended February 1, 1920. On the 16th day of March thereafter Pearson paid to the clerk of the local camp at Crump, Arkansas, the sum of $10.35, the same being installments or dues for January, February and March.

The clerk of the local camp issued receipts for these payments. On the 6th of April Pearson paid his April dues, and on May 17th paid his May and June dues, and receipts were issued for these months also. The local clerk sent the fund to the sovereign camp, except for the month of June. He withheld that because Pearson died on the 28th day of May, and the June installment was not due the Sovereign Camp. At the time the local camp clerk received the payments for the months of January, February and March, he knew that Pearson was in bad health. He had mailed Pearson a certificate to be signed showing that he was in good health, but Pearson never did return it. When Pearson failed to pay his dues, his name was left off of the list of beneficiaries, and the records at the Sovereign Camp showed that he was suspended. Pearson's name was still left blank for the months of February and March. The local camp clerk remitted the payments for those months in April and the appellant accepted it. The local clerk at that time did not send to the appellant the reinstatement showing that Pearson was in good health.

A section of the by-laws of the appellant provides as follows: "Should a member be suspended more than three and less than six months for any cause, in order to be restored to beneficiary membership it shall be necessary for him to present a certicate of good health from the camp physician. * * * He shall pay four monthly installments of assessments and dues to the clerk of the camp. Three installments of assessments shall be forwarded immediately by the camp clerk, with the certificate of good health, to the sovereign clerk. The fourth shall be placed to the credit of the member as payment for the current month, and upon receipt and acceptance of said three monthly installments of assessments by the sovereign clerk, if the member shall remain in good health for the next thirty days following, his beneficiary certificate shall be in full force and effect."

Another section provides as follows: "That, after the expiration of ten days, and within three months after the date of the suspension, the suspended member to reinstate must pay to the clerk of the camp all arrearages and dues and deliver to him a written statement and warranty, signed by himself and witnessed, that he is in good health at the time, and continue in good health for thirty days thereafter, * * * as a condition precedent to reinstatement, and waiving all rights hereto if such written statement and warranty be untrue."

Another section provides that "any attempted reinstatement shall not be effective for that purpose unless the member be in fact in good health at the time and continue in good health for thirty days thereafter, and if any of the representations or statements made by said applicant are untrue, then said payments shall not cause his reinstatement nor operate as a waiver of the above conditions."

Another section provides: "No officer, employee or agent of the Sovereign Camp, or of any camp, has the power, right or authority to waive any of the conditions upon which beneficiary certificates are issued, or to change, vary or waive any of the provisions of this constitution or these laws, nor shall any custom on the part of any camp or any number of camps, with or without the knowledge of any sovereign officer, have the effect of so changing, modifying, waiving or foregoing such laws or requirements."

One of the laws of the appellant provides as follows: "On or before the twentieth day of every month he (sovereign clerk) shall mail a notice to the last known address of the counsel commander, clerk, banker and auditors of every camp from which no report or remittance for the month has been received, stating the fact therein. As soon as the required monthly report has been received from a camp, he shall mail a notice to the last known address of every member reported suspended in said report, informing him of the requirements of the

laws of this society to become reinstated, but the failure to send such notice shall in nowise affect the legal suspension of such members.''

It was in proof that Pearson never received notice from the appellant that he had been suspended. It was shown that it was the custom of Pearson to pay his dues each month if it was convenient, but the local clerk had established the custom of accepting dues from Pearson, when he was in arrears from thirty to sixty and ninety days, without any further requirement. This was perfectly agreeable and had always been the case as to the payment of dues by Pearson. The local camp clerk had been given authority to establish what was known as ''home camp dues,'' and after the local camp got strong enough and had money enough it would draw on that amount and send the dues of delinquent members in, and such member paid the local clerk at his own convenience. Sometimes the member would be a month behind and would pay for two months, that is, for the current month and a month or two ahead. The names of the members who were in arrears were left off in remitting to the head camp, and later, in a succeeding report, the arrears and dues for that particular month were included. No certificate of good health was furnished, and it was not required to be furnished by the Sovereign Camp. The appellant received and retained the payment of the dues for the particular member who had been in arrears and would issue its receipt for such dues. The local clerk was supposed to follow the directions of the head or sovereign clerk, and the sovereign clerk was supposed to furnish the local clerk with such blanks and papers as the local clerk was expected to use. The local clerk did not report to the sovereign clerk, when a member had been suspended, whether or not the member had furnished him with a certificate of good health. When the member came and paid the dues in arrears, the local clerk would reinstate him, and would report that such member was reinstated, to the sovereign clerk, and the

appellant would accept the money. The local clerk's books showed that Pearson had been suspended and was reinstated on June 6, 1919, by payment of back dues, and without his physician's certificate of good health attached. The local clerk did not send the appellant a doctor's certificate, but appellant received the dues, and such was the custom.

There was nothing in the constitution or by-laws of the appellant that required the local clerk to send to the sovereign clerk a doctor's certificate showing good health of the member unless the member was suspended for more than three months. Pearson was not suspended for a longer period of time than ten days. All the records kept by the local camp were forwarded to the appellant, and the only record kept by the local clerk was a duplicate of the report made by the local clerk upon the forms furnished by the appellant. The appellant tendered to the appellee the sum of $20.40, the amount of all dues and moneys paid by Pearson after January, 1920, which she refused to accept. Upon the refusal of the appellant to pay the appellee the amount named in the certificate, she instituted this action thereon, setting up a full compliance on the part of Pearson at the time of his death with the terms of the contract of insurance, and praying judgment for the full amount of the policy.

The appellant defends on the ground that Pearson had not complied with the terms of the contract as to the payment of dues; that he had been suspended and was never reinstated as the laws of the society required, and that under these laws the contract at the time of Pearson's death was void. At the commencement of the trial the appellant tendered to the appellee the further sum of $3.45, making a total of $23.85, the monthly dues that had been paid by Pearson after his suspension up to the time of his death, which the appellee refused. The cause proceeded to trial, and the facts as above set forth were developed. At the conclusion of the testimony each party requested a peremptory instruction. The court in-

structed the jury to return a verdict in favor of the ap·
pellee in the sum of $1,000, and from a judgment rendered
in her favor for that sum is this appeal.

The judgment is correct. This case on the facts is
ruled in principle by the doctrine of this court announced
in the opinion on rehearing in the case of *Sovereign
Camp W. O. W.* v. *Newsom*, 142 Ark. 158, where, quoting
from 2 May on Insurance, § 361, we said: ''Forfeit·
ures are so odious in law that they will be enforced only
where there is the clearest evidence that such was the in-
tention of the parties. If the practice of the company
and its course of dealings with the insured, and others
known to the insured, have been such as to induce a be-
lief that so much of the contract as provides for a for-
feiture in a certain event will not be insisted on, the com-
pany will not be allowed to set up such a forfeiture, as
against one in whom their conduct has induced such be·
lief.'' In that case we further said: ''The clerk, through
a period of years, had adopted the method set forth in
the original opinion, which was clearly calculated to in-
duce the belief on the part of Newsom that his dues had
been paid according to the method adopted by the local
clerk for collecting the dues and reporting the same, and
that the society had accepted such payments and would
therefore not insist upon a forfeiture because of the
failure of the clerk to comply, in this respect, with its
laws and constitution.

In the case of *Sov. Camp W. O. W.* v. *Barnes*, 154
Ark. 486, we held that the requirement of the by-laws
concerning a certificate of good health as a condition pre-
cedent to the reinstatement of a suspended member is
not waived by the retention for a time of a remittance
and until after the death of the deceased. We also held
that there was no waiver of the noncompliance with the
provisions of the by-laws merely by the acceptance by a
local officer of the dues and assessments.'' Citing *W. O.
W.* v. *Jackson*, 80 Ark. 419; *Sov. Camp W. O. W.* v. *An-
derson*, 133 Ark. 411.

But in none of these cases was there any testimony to prove that the sovereign clerk continued to receive the payments of monthly dues after he had knowledge of the fact, or under circumstances which charged him with knowledge, that the delinquent member had not been reinstated. Here the testimony tended to prove that the local clerk followed the directions of the sovereign clerk; that the sovereign clerk was to furnish to the local clerk the form of the certificate for reinstatement, which was to be signed by the delinquent member; that no such blank certificate was ever furnished by the sovereign clerk to the local clerk. The only record kept by the local clerk was a duplicate of the report made by him upon the forms furnished by the appellant. Now, the local clerk, whose duty it was to collect the monthly dues and to report the standing of members to the Sovereign Camp, notwithstanding the fact that Pearson failed to pay his dues in January and was reported in February as suspended to the sovereign clerk, nevertheless thereafter collected the dues for January, February and March without a compliance on the part of Pearson with the requirements of the by-laws for reinstatement. The local clerk also reported to the sovereign clerk in April showing that Pearson had been reinstated, but he did not accompany this report with the certificate showing that Pearson was in good health and had complied with the requirements of the by-laws for reinstatement. The sovereign clerk was thus advised that Pearson had not complied with the requirements of the by-laws and had not been properly reinstated. While the receipts given to Pearson by the local clerk show that the dues paid for January, February and March were held in trust until all the requirements of the society relative to reinstatement had been complied with, yet he forwarded these dues and receipts therefor to the sovereign clerk without any certificate of good health of Pearson, and the sovereign clerk, after being thus advised that the requirements had not been complied with by Pearson, did not

promptly return these dues for January, February and March. On the 6th day of April Pearson paid his April dues, and on May 17th he paid his May and June dues, and the receipts issued by the local clerk for these dues did not show that they were held in trust awaiting the certificate of good health as required by the by-laws. The local clerk forwarded these dues for April and May and June to the sovereign clerk, and there was still no certificate of good health showing that the requirements as to reinstatement had been complied with, and the sovereign clerk had not sent any such blank or certificate to the local clerk for Pearson to sign. Instead of promptly returning these dues and advising the local clerk that the requirements as to reinstatement had not been complied with, and forwarding the necessary blanks for reinstatement, the sovereign clerk, who, under the circumstances, must be held to have had knowledge of all these conditions, retained the dues until after the death of Pearson, without any inquiry of the local clerk or Pearson as to why the requirements as to reinstatement had not been complied with. The sovereign clerk could not continue to accept and retain the payments of dues after he knew, or should have known, that Pearson was not reinstated according to the laws of the order.

Furthermore, there was testimony sufficient to show that a general custom had been established in the local camp of allowing its members who were in arrears to be reinstated by paying their delinquent dues without complying with the requirements of the by-laws for reinstatement. The Sovereign Camp accepted and retained the dues in such cases, knowing that certificates of good health of the defaulting members had not been furnished. There was proof that the local camp had established a fund known as "home camp dues," and when a member was delinquent for a month or two months the local clerk would draw on this fund and pay the delinquent dues, and give the member in default the privilege of paying at his own convenience. Authority was given

under the by-laws and under the direction of the head camp to establish that fund, and the local camp was privileged to use such fund to defray its expenses and in whatever manner it deemed proper. It will thus be seen that the facts of this case clearly differentiate it from the facts of the cases of *Sovereign Camp W. O. W.* v. *Barnes,* and *W. O. W.* v. *Jackson,* and *Sov. Camp W. O. W.* v. *Anderson, supra.*

Thus was established a course of conduct on the part of the local clerk which was acquiesced in and approved by the Sovereign Camp, which was calculated to mislead Pearson and cause him to believe that the Sovereign Camp was not insisting on the certificate of good health; and to cause him to make his payments believing that he was in good standing with the society. This conduct was such as to estop the appellant from insisting, under the doctrine of the Newsom case, *supra,* on the forfeiture of the policy because of the noncompliance with the by-laws as to reinstatement. See, also, *Sov. Camp W. O. W.* v. *Richardson,* 151 Ark. 231-236; *Grand Lodge A. O. U. W.* v. *Davidson,* 127 Ark. 133-139. Cases from other jurisdictions are cited to the same effect and relied on in appellee's brief, but it is unnecessary to cite these, as the case is controlled by the doctrine of estoppel announced in *Sov. Camp. W. O. W.* v. *Newsom, supra.*

The judgment is therefore correct, and it is affirmed.