ORDER OF RAILWAY CONDUCTORS OF AMERICA *v.* SKINNER.

4-3647

Opinion delivered January 7, 1935.

*D. W. McMillan, Grimm, Elliott, Shuttleworth & Ingersoll* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

*Paul H. Callaway* and *Joseph Callaway,* for appellee.

MEHAFFY, J. On June 15, 1920, the appellant, a fraternal benefit society, organized under the laws of the State of Iowa, and operating on the assessment plan, issued its certificate of membership to Walter A. Skinner, whereby it agreed to pay to the appellee, Ethel

Skinner, $3,000 in the event of the death of the insured. Ethel Skinner was the wife of W. A. Skinner.

The certificate issued in 1920 was surrendered in August, 1931, and a new certificate, known as ordinary life certificate was issued for the same amount payable to the appellee.

On August 5, 1932, W. A. Skinner died. All premiums, dues, and assessments had been paid by the insured except the sum of $19.04, which amount was mailed to the appellant on the same day that the insured died, but after his death.

The policy, application, constitution and by-laws of appellant constitute the contract. The policy contains the following provision with reference to premiums: "Regular premiums must be paid annually, or semi-annually, quarterly or monthly in advance to the office of the general secretary and treasurer, Cedar Rapids, Iowa, at the rate indicated on the first page hereof, during the lifetime of the member until this certificate has been surrendered or canceled. If any premium is not paid when due as provided, this certificate shall automatically and without notice become void, except as otherwise herein provided."

The by-laws provide that the payment of premiums are due and payable on the first day of each and every calendar month without notice of assessment or any other notice whatsoever; provided that for each monthly payment there shall be a grace period consisting of the balance of the calendar month. Payments must be made under this by-law during the life of the member, and must be remitted directly to the general secretary and treasurer at the home office. Another section of the by-laws provides that, if default occurs in the monthly payments, the certificate shall thereupon automatically and without action or notice, be and become suspended, and all rights and benefits shall cease, except as otherwise provided. The section of the by-laws then provides that within 30 days after the default, within the calendar month of grace, the member shall be entitled to reinstatement by the payment of all monthly payments in arrears, together with the current monthly payment due. It is also pro-

vided that after the 30 days following the period of grace, reinstatement can only be effected by written application with warranty of good health and such further evidence as may be required and accepted by the insurance committee, together with payment in full of all monthly dues in arrears and interest thereon, and the current monthly payment then due. No officer or member has authority or power to waive any provision of the by-laws, or to adopt rule or provision inconsistent with the by-laws.

The case was tried and the court instructed the jury if they found for the plaintiff the amount should be for $2,980.96. The jury returned a verdict for $2,980.96 with 6 per cent. interest from August 25, 1932, and judgment was entered accordingly. Motion for new trial was filed and overruled, and the case is here on appeal.

Prior to August 1, 1931, the appellant operated on the assessment plan, but from August 1 it was changed to the level premium legal reserve plan. The appellant contends that the policy lapsed because the July, 1932, premium was not paid either on the first day of July or any time within the calendar month, and that it could not be paid after the grace period without the insured's compliance with the regulation. It is contended that he would have had to be reinstated before his death, and there is no claim that this was done or attempted. The appellant makes the contention that, while the premium might be paid any time within the calendar month, yet, after the calendar month and between that date and the date it was paid, the certificate was suspended, and that during that time there was no liability.

The appellee contends that the appellant had, by its course of conduct and manner of receiving the premiums, waived the provision in the policy and by-laws with reference to forfeiture.

The only question for our consideration is whether the provisions in the certificate and by-laws with reference to the payment of premiums and suspension of members were waived.

The appellee testified that no written application for reinstatement was made, when the premium was paid after the expiration of the 30 days, and that Mr. Skinner

was never asked to furnish any evidence of good health to get reinstated. The dues for October, 1931, were paid in December. The money order was purchased on December 30. The December, 1931, premium was paid in January, 1932, and the undisputed evidence shows that five of the eleven premiums paid on the new policy were sent more than 30 days after the month in which they were due. The undisputed evidence also shows that the insured was never required to comply with the provision in the certificate or by-laws in order to be reinstated. The dues not only had to be paid under the by-laws, but received at the home office within the time allowed. The general secretary testified that his record did not show when the August and September payments of 1931 were received, but it is undisputed that he wrote to Mr. Skinner on September 2, 1931, and stated that the August premium was due. This was after the calendar month in which the payment should have been made.

There is no testimony about the time when payments were made under the old policy, but the evidence shows that all premiums were paid on that policy up to 1931 when the new policy was issued. The testimony of the general secretary shows that the October, 1931, premium was paid December 16; the November, 1931, premium was paid December 31; the December, 1931, premium was received February 1, 1932; and the January, 1932, premium was paid February 1; and the February, 1932, premium received March 2. He also testified that the March premium was paid by postal money order purchased March 31, 1932, and that his records showed that it was received the same date. In other words, according to the record, the postal money order was purchased in North Little Rock on March 31, and received in the home office in the State of Iowa on the same date.

There is apparent conflict between the provisions of the certificate and the by-laws. This court has said: "There being a conflict between the provision in the benefit certificate and the by-laws, the former must control." *Mosson* v. *Woodmen of Union,* 164 Ark. 568, 262 S. W. 648.

We think however that it is immaterial in this case whether the benefit certificate provision controls, or the provision of the by-laws. The insured and beneficiary were both bound by the provisions in the benefit certificate and in the by-laws, unless these provisions were waived by the appellant. If they were not waived, there was a forfeiture of the policy.

The court recently said: "We are therefore of the opinion that the evidence is sufficient to establish a custom of appellant to accept payment of premiums after the expiration of the grace period, both as fixed in the policy, and as appellant says it permitted to the fraternal policyholders. At least the evidence was sufficient to submit the question to the jury as to whether appellant had established such a custom. In Cooley's Briefs on Insurance (2d ed.) vol. 5, p. 4392, it is said: 'Thus, where defendant insurance society, prior to April, 1906, had been in the habit of receiving payment of monthly assessments from insured during the month for which they were made, without requiring him to be reinstated, it thereby waived the requirement that insured must pay the assessment on or before the last week day of the month preceding the month for which they were made, and could not, without first giving insured reasonable notice of its intent to change its custom, require him to make payments strictly in accordance with the contract, nor require his reinstatement without notice of such change for his failure to pay the April, 1906, assessment prior to the last week day in March.'

"See, also, *Sovereign Camp W. O. .W.* v. *Newsom,* 142 Ark. 132, 219 S. W. 759. After such custom had been established, appellant could not change the custom and lapse the policy where payment was made within the customary time, without notice of its intention to abandon the custom. *Sovereign Camp W. O. W.* v. *Condry,* 186 Ark. 129, 52 S. W. (2d) 638." *Columbian Mutual Life Ins. Co.* v. *High,* 188 Ark. 798, 67 S. W. (2d) 1005.

"It is a general principle that forfeitures are not favored in law, and nowhere is this more applicable than in the construction of insurance contracts (*Palatine Ins. Co.* v. *Ewing,* 92 Fed. 111, 34 C. C. A. 236). A construc-

tion of a policy resulting in a forfeiture will not be adopted except to give effect to the obvious intention of the parties. * * * Nor will provisions for the forfeiture in policies of insurance be extended beyond the mischief intended to be met thereby. Contracts of insurance, whether of life or fire insurance, will therefore be construed so as to avoid a forfeiture if possible." *N. Y. Life Ins. Co.* v. *Shivley,* 188 Ark. 1044, 69 S. W. (2d) 392; 2 Cooley's Briefs on Insurance, 991; *Maloney* v. *Maryland Casualty Co.,* 113 Ark. 174, 167 S. W. 845; *Pfeiffer* v. *Mo. State Life Ins. Co.,* 174 Ark. 783, 297 S. W. 847.

This court has repeatedly held that the burden is on the insurance company to show a forfeiture for nonpayment of premiums. In this case the premiums were not paid within the time fixed by the certificate and bylaws; the policy was continued in force, and no request was ever made for a written application or any other requirement of the policy. In addition to this, the general secretary, writing on September 2, 1931, to Walter A. Skinner, the insured, states that the August premium is due on the new rate, and also states that the September payment must be made before September 30th, but he also says in the same instrument that the new certificate will be issued as soon as possible, and that meanwhile the insured will be protected for $3,000 of insurance on the ordinary life and disability plan, as applied for, provided he remitted the monthly premium. This letter was written after the grace period, and seems to show clearly that it was not the intention to forfeit the policy because the premium had not been paid at the proper time. Whether the certificate was suspended or forfeited for failure to pay dues, was a question of fact for the jury, and, as we have already said, the burden of proof was on the appellant. The finding of the jury on this question is conclusive here.

The court submitted the case to the jury under the following instruction: "You are instructed that this is a suit by the plaintiff as beneficiary under the terms of a certain certificate of insurance issued on the life of her husband, Walter A. Skinner. This suit is defended on the grounds that the policy had lapsed because the

monthly premium due July 1, 1932, was not paid within the month of July. On this point you are told that, if you find from a preponderance of the evidence that on previous occasions payments had been received on this policy later than the premium for the month of July, 1932, was received, and yet they had been accepted by the defendant and the insurance policy continued in force, and that this had been done to such an extent as to lead the insured and the plaintiff as reasonably prudent persons to believe that the policy would be continued in force if the premiums were received by the time the July, 1932, premium was received, you will find for the plaintiff.''

It is contended however that the insurance company, during the calendar month in which a premium was due, was bound to accept the premium, and did not, by accepting the premium, waive the provision of the policy or by-laws. This is true during the calendar month, but numbers of premiums were paid after the expiration of the grace period, and no application made for reinstatement and none required. The evidence conclusively shows that the insured was never required to make application for reinstatement or to show that he was in good health, or to do anything else except send the money for the premium. No claim was ever made by the appellant that he should comply with the provisions of the contract, and the jury were justified in finding from the evidence that the provisions of the contract were waived.

We find no error, and the judgment is affirmed.