UNITED FRIENDS OF AMERICA *v.* AVERY.

4-4281

Opinion delivered April 20, 1936.

*Ingram & Moher,* for appellant.

*Wm. C. Gibson* and *M. F. Elms,* for appellee.

BUTLER, J. Appellant, defendant in the court below, is a fraternal beneficiary society and has local branches which are styled councils. One of these known as Pride of Stuttgart Council No. 37, is located in the town of Stuttgart. On October 21, 1928, appellee, plaintiff below, became a member of said local council, and was issued the certificate providing for certain death benefits, and for medical and hospitalization in case of sickness. Appellee paid her dues according to the un-disputed evidence down to and including the month of July, 1935. These premiums were due on the first day of each month with a grace period of twenty days which continued until November, 1932, when by an amendment to the bylaws the grace period was thirty-one days beyond the due date. In August, appellee applied for admission into appellant's hospital located at Little Rock. Her application was granted and she remained in the hospital for a period of about ten days. Her ailment was diagnosed as a tumor. She was advised that an operation was necessary, but because of the heat of the

summer she was told to return to the hospital about the middle of October for the operation. On October 1, she sent $2.70 for two months dues to the home office of appellant in Little Rock by a colored man, who, when the money was tendered, was asked if he brought a certificate showing the appellee to be in good health, and when appellant's officials were told that he had not, he was told that the member was "nonfinancial," and that her dues would not be accepted unless accompanied by a certificate of her physician showing that she was in good health. About the time she was notified to return to the hospital she appeared there bringing with her the $2.70, and again tendered it to the appellant. The money was refused, and she was denied admission to the hospital, whereupon she instituted this suit. The suit, as instituted, was based upon the theory that appellant had paid her dues down to and including the month of August, 1935, and that as she had tendered the premium for September within thirty-one days from the first of the month, she was not in arrears, but in good standing, with her benefit certificate in full force, and that appellant's refusal to carry out the terms of the contract entitled her to a return of the premiums she had paid. The defense tendered alleged the failure and neglect of the appellee to pay the dues for August 1, September 1, and October 1, 1935, and to furnish appellant with a health certificate or application for reinstatement as required by the bylaws, and that by reason thereof appellee was suspended from membership in the society, and has continued so to be, and, because of the default and neglect stated, the society had the right and did declare a forfeiture of said policy. Defendants pleaded as a part of its bylaws applicable sections 1, 2, 4, 5, 10 and 12 thereof, and an amendment thereto adopted in October, 1930. The bylaws provided in short for an annual premium of $15 divided in monthly payments of $1.25 each due on the first of the month with a grace period of twenty days. That if a member take sick or die before the 20th with his dues unpaid he shall be deemed "financial," provided all previous monthly payments had been made, and be entitled

to and receive all benefits under the terms of his certificate as though he had paid and was "financial." But, if the grace period had expired in which payment might be made, the member defaulting would be delinquent, and if while delinquent a member should become sick he should not be allowed to pay his delinquent dues until he was restored to health, and during his illness would not be entitled to or receive any benefits; that all members must be "financial" when they take sick, and remain so while sick, in order to be entitled to the benefits provided. A member allowing his dues to get delinquent for three months was required to furnish the general office with a health certificate certifying his good health as a prerequisite to their acceptance, signed by a reputable physician.

The amendment of October 30, pleaded in the answer was introduced in evidence by the grand secretary of the society, which is to the effect that a member from one to two months behind "could pay up by filling out a past-due endowment, provided his local commander and secretary would sign same indicating that said member was in good health. But if a member owed three months a doctor's certificate, by a regularly licensed practicing physician, in addition to the past-due endowment, had to be furnished by a member."

In addition to the by-laws pleaded, appellant introduced in evidence without objection the amendment to the bylaws of November, 1932. This amendment provided for a grace period of thirty-one days after the due date of any premium, and further provided that after the expiration of this period policies, on which premiums have not been paid, shall automatically lapse, but may be reinstated "if a member can furnish satisfactory evidence of good health, but in no case shall a lapsed policy be reinstated without such evidence."

By the terms of the certificate the bylaws are made a part thereof, and it is application of those referred to above as construed in *Sovereign Camp Woodmen of the World* v. *Anderson,* 133 Ark. 411, 202 S. W. 698; *Woodmen of the World* v. *Jackson,* 80 Ark. 419, 97 S. W. 673;

and *Modern Woodmen of America* v. *Seargeant*, 188 Ark. 1098, 69 S. W. (2d) 397, which appellant contends defeats recovery.

The trial resulted in verdict and judgment for the appellee in the amount sued for from which comes this appeal. The contention for reversal is that the court should at appellant's request have directed a verdict in its favor, and next that the case was submitted to the jury on an erroneous theory and declarations of law.

As to the payment made in August for the premium coming due on the first of that month the evidence conflicts. That offered on behalf of appellee tended to support her contention and warranted the submission of the case to the jury, but inasmuch as that question was not submitted to the jury it passes out of the case.

The first instruction given by the court on behalf of appellee was to the effect that under the bylaws the dues of a member maturing while he was sick is waived during the period of illness, and the jury was told that if appellant was sick during the months of August, September and October, 1935, and before her recovery she tendered all premiums due or delinquent, the appellant had no right to lapse or forfeit the policy during such period. This instruction was given over the objection and exception of the appellant, and it is now urged that same was in conflict with the bylaws and not a proper declaration. This instruction is doubtless based upon the court's construction of that part of section 1 of the bylaws providing that where a member is sick before the expiration of the grace period, and he has paid all previous monthly premiums "the organization shall hold him financial the same as though he had paid for that month. * * * In this case he shall be entitled to and shall receive all benefits * * * as though he had paid and were financial."

It is unnecessary for us to determine whether or not the trial court correctly interpreted these provisions, because from the views we entertain of this case it was not prejudicial, neither can the other objections made of the court's declarations, made on behalf of the plain-

tiff, or its refusal to direct a verdict for the appellant, be sustained. Our conclusion based on undisputed evidence is that the trial court should have directed a verdict in favor of the plaintiff, and, therefore, the verdict of the jury to that effect, although based on erroneous instructions, is correct and will not be disturbed.

It is the contention of the appellant that appellee was three months in arrears with her dues, and in attempting to make the payment on October 1, 1935, was doing so without complying with appellant's bylaws, and, therefore, the refusal to accept the payment and declare the policy delinquent and appellee entitled to none of its benefits was justified. In the first place it may be said that appellant's assumption that appellee was three months in arrears is erroneous. If it be granted, as contended by it, that appellee had not paid her premiums for August she had all of September and until October 1st, until the thirty-one day grace period expired to pay her September premium, and until October 31, to pay that months premium, and, therefore, when the $2.70 was tendered appellee was only delinquent for one month, and appellant's demand for a doctor's certificate was not warranted by any of the bylaws pleaded in its answer or offered in evidence except the amendment of November, 1932. But this provision of the bylaws as well as the others providing for payment of premiums was violated by the appellant on numerous occasions, as we will presently show, and at a time not exceeding three or four months before the date of its refusal to accept the tender. Before this, for a long period of time, appellant had ignored its own bylaws, and on many occasions had accepted past-due and delinquent premiums without requiring appellee to comply with the provision of the bylaw relative to the payment and acceptance of delinquent premiums.

"The principle of estoppel in equity stands upon the very foundation of right and fair dealing. It considers and weighs the conduct of men in their dealings with each other, and gives that effect and meaning to their actions which common sense and justice dictate.

A fraternal insurance association, such as appellant, is as much subject to the operation of its principles as any other association of persons or as an individual. * * *

" 'Forfeitures are so odious in law that they will be enforced only where there is the clearest evidence that such was the intention of the parties. If the practice of the company and its course of dealings with the insured and others known to the insured have been such as to induce a belief that so much of the contract as provides for a forfeiture in a certain event will not be insisted on, the company will not be allowed to set up such a forfeiture, as against one in whom their conduct has induced such belief'." *Sovereign Camp W. O. W.* v. *Newsom*, 142 Ark. 132, 219 S. W. 759.

Until amended by an amendment adopted in 1932, the bylaws provided for the payment of premiums upon the first of each month, with a twenty-day grace period. By the amendment above noted, the grace period was changed from twenty to thirty-one days. The appellant voluntarily introduced a record of the payment of premiums beginning with that for the November period in 1928 and continuing down for each monthly payment thereafter to and including the July payment made in 1935. This record conclusively shows that from the inception of the contract the provisions of the bylaws with respect to the payment and acceptance of premiums were consistently ignored and disregarded. The premiums for November and December, 1928, and for January, 1929, were paid on the 21st day of each of those months. The premium due February 1, 1929, was not paid until the 5th day of March following, and on the date of its acceptance had been delinquent thirteen days. Throughout the remainder of the year, 1929, the payment for each month was beyond the grace period except December, which was paid within that period. The May and June premiums were not paid until July 7, making the May payment forty-six days late, and the June payment seventeen days late. The record is that for the months of 1930 all, save for the month of February, were paid beyond the grace period. The payments due respectively

May, June, July and August 1st were not paid until September 8, thus making the payment and acceptance of the May premium 111 days beyond the grace period, that of June, 81 days late; July, 50 days and August, 19 days late. The payments for September, October, November and December were made and accepted December 24, making a default of 94 days for September and more than two months for October. In 1931, the same process is repeated in the main. The premium payment for October was twenty-nine days delinquent when payment was made and accepted. Also, in 1932, the premium for each and every month was delinquent when payments were made and accepted, except November, which was paid within the grace period of thirty-one days. The premiums for February, March and April were not paid until May 11. Those of June were not paid until August 8, those for August and September not until October 13, and those for January not until March 2, 1933. In 1933, the premiums for all the months up to August were delinquent when payment was made. In 1934, the premiums for February were not paid until March 31, and for November were not paid until December 31. For these months payments were made and accepted under delinquencies practically identical with that of August, 1935, when the premium was refused when tendered on October 1, 1935. The premium for May, 1935, was 29 days delinquent when its payment was made and accepted on June 29. While the foregoing analysis may not be entirely accurate it is substantially so, and serves to demonstrate appellant's course of conduct systematically pursued. It is no where shown or contended that appellant at any time advised the appellee that it intended to discontinue this method of procedure and to insist on a compliance with the provisions of its bylaws. If it intended in the future to insist upon a compliance with its bylaws, fair dealing required of it that it so notify its policyholder, and in order to change its custom and lapse the policy for a noncompliance of the bylaws which had been acquiesced in on numerous occasions, such notification must have been given. *Sovereign Camp, W. O.*

*W.* v. *Gondry,* 186 Ark. 129, 52 S. W. (2d) 638; *Columbian Mutual Life Ins. Co.* v. *High,* 188 Ark. 798, 67 S. W. (2d) 1005.

The course of conduct on the part of the appellant was such as to estop it from insisting on the forfeiture of the policy because of a noncompliance with the bylaws as to reinstatement, for it is plain that by it appellee might reasonably expect the same indulgence would be shown her as to the August premium as had been shown her in the past, and it is reasonable to infer this doubtless would have been done if the appellant had not discovered appellee was sick and would be unable to procure a certificate of good health.. It was then, and not before, that it demanded a strict. enforcement of its bylaws. The case presented, calls for an application of the principles announced in the cited cases, *supra.* In *Sovereign Camp, W. O. W.* v. *Pearson,* 155 Ark. 328, 244 S. W. 344, we said: "If the practice of the company and its course of dealing with the insured, and others known to the insured, have been such as to induce a belief that so much of the contract as provides for a forfeiture in a certain event will not be insisted on, the company will not be allowed to set up such a forfeiture, as against one in whom their conduct has induced such belief." * * *

"Thus was established a course of conduct on the part of the local clerk which was acquiesced in and approved by the sovereign camp, which was calculated to mislead Pearson and cause him to believe that the sovereign camp was not insisting on the certificate of good health; and to cause him to make his payments believing that he was in good standing with the society. This conduct was such as to estop the appellant from insisting, under the doctrine of the Newsom case, *supra,* on the forfeiture of the policy because of the noncompliance with the bylaws as to reinstatement."

The principles announced in the foregoing cases were noticed and reaffirmed in the recent case of *Order of Railway Conductors of America* v. *Skinner,* 190 Ark. 116, 77 S. W. (2d) 793.

Our attention is called to the fact that the issue upon which this case was disposed was not such as was presented by plaintiff's complaint. This, however, was brought about by the facts established on cross-examination of appellant's secretary and treasurer to which no objection was made and warranted the court under settled rules of procedure to treat the complaint as amended, and under the proved facts to have directed a verdict for the plaintiff.

The judgment will, therefore, be affirmed.