## WOODMEN OF THE WORLD *v.* JACKSON.

### Opinion delivered November 5, 1906.

1. BENEFIT SOCIETY—REINSTATEMENT—BURDEN OF PROOF.—One seeking to recover on a benefit certificate held by a member of a fraternal society who had been suspended for nonpayment of dues assumes the burden of proving that such member has been reinstated. (Page 423.)

2. SAME—SUSPENSION AND REINSTATEMENT.—Where the by-laws of a fraternal insurance company provided that a suspended member, in order to accomplish his reinstatement, must pay all arrearages, must be in good health, and must either appear before the clerk of his lodge in person or the clerk must have actually received this written application stating that he is in good health, an instruction that if the arrearages of a suspended member were paid to the clerk and accepted by him then the insurer was estopped to set up such failure was erroneous, as ignoring the testimony as to the by-laws and that the money was promptly returned by the insurer. (Page 423.)

3. SAME—ESTOPPEL BY RECEIPT OF ARREARAGES.—Where the by-laws of a fraternal insurance company stipulate that an attempted reinstatement of a suspended member shall not be operative unless the member is in fact in good health at the time, receipt by the local officer of a suspended member's arrearages will not estop the insurer from showing that the suspended member was not in good health at the time of his attemped reinstatement. (Page 423.)

4. EVIDENCE—ADMISSION AGAINST INTEREST.—In a suit by the beneficiary in an insurance policy, where she relied on a reinstatement of her husband's policy, it was error to exclude proof of an admission by plaintiff tending to invalidate such reinstatement. (Page 424.)

5. APPEAL—CONFLICT IN RECORD.—In case of conflict between the stenographer's notes and the bill of exceptions certified by the trial judge, the latter will control. (Page 424.)

Appeal from Union Circuit Court; *Charles W. Smith,* Judge; reversed.

Action by Alice R. Jackson against the Woodmen of the World, a fraternal insurance society, to recover the sum of $500 on a benefit certificate or policy issued to the plaintiff's husband, W. L. Jackson, in which she was named as beneficiary.

The plaintiff recovered judgment below, and the defendant appealed.

*Marsh & Flenniken* and *Bradshaw, Rhoton & Helm,* for appellant.

1. The burden was on plaintiff to show that Jackson had complied with the laws of the order, either by appearing in person, or by sending the written application for reinstatement. Her failure to produce evidence was an admission against her. 1 Greenleaf, Ev. (16 Ed.), § 195. The laws of appellant were proved; also the suspension, failure to reinstate as provided by the laws, Jackson's illness at the time of his attempted reinstatement. The evidence therefore does not sustain the verdict. 28 Ark. 550; 34 Ark. 632; 7 Ark. 462; 15 Ark. 540; 20 Ark. 443; 24 Ark. 224.

2. The statement of Alice Jackson, made to the physician, as to the duration of deceased's illness was admissible as being made against interest. Bradner on Ev. 456. 1 Greenleaf, Ev. (16 Ed.), § § 770a, 171. Declarations of the deceased to the physician as to the duration of his illness were admissible for the same reason. 74 Ark. 104; 37 Ark. 580; 60 Ark. 26.

3. The cause should be reversed for errors and inconsistencies in the instructions. Instructions should harmonize; otherwise they confuse. 59 Ark. 104; 55 Ark. 397.

*R. G. Harper* and *Thornton & Thornton,* for appellee.

1. There was sufficient evidence to support the verdict.

2. The testimony of the physician concerning what was told him as to W. L. Jackson's sickness was properly excluded. The record does not disclose what statements were made to him, nor was any effort made to prove what they were. Moreover, at the time they are alleged to have been made, Jackson was still alive. No statements made then could have been against interest.

3. Appellant's objections to instructions, being general, were not sufficient. It should have made specific objection, or offered a

correct instruction.   66 Ark. 48; 65 Ark. 624; 71 Ark. 317; 56 Ark. 394; 69 Ark. 637; 60 Ark. 619; 93 S. W. 562.

If the verdict is right on the whole case, this court will not reverse, even if improper instructions were given.   44 Ark. 556; 19 Ark. 667; 43 Ark. 296; 46 Ark. 542.

McCULLOCH, J.   W. L. Jackson, the husband of plaintiff, became a member of appellant society and received the policy sued on September 28, 1901, and died on November 25 of the same year. He paid the September assessment in the beneficiary fund, but failed to pay, within the month of October, assessment number 133 called for that month, and he stood suspended on that account.

The laws of the society, which formed a part of the contract, provide that if the member "fails to pay any of the above assessments or dues on or before the first day of the month following, he shall stand suspended, and during such suspension his beneficiary certificate shall be void."

The question whether Jackson paid the October assessment within due time depended entirely upon the testimony of the clerk of the local camp, as the subordinate body is termed, of which Jackson was a member.   No other testimony on the subject was introduced by either party.   He testified that the assessment was not paid on or before the first day of November, and that he made report to the sovereign clerk of the suspension of the member.   He further testified that some time between the first and twentieth days of November, while he was at El Dorado, the county seat, on business, the amount of Jackson's assessment, number 133, was left at his (witness') home by Jackson's son, and that immediately on his return home, which was about November 20, he forwarded the amount to the sovereign clerk. The witness first stated that when the money was left there he was attending the circuit court at El Dorado, and some confusion in his testimony arose when his attention was called to the fact that circuit court was in session at El Dorado in October, not in November, but he then explained the discrepancy by saying that he was at El Dorado on other business, and was not attending court at that time.   We do not think that this slight discrepancy, which was fully and reasonably explained, warranted the jury in rejecting his testimony entirely.   He testified positively that the

payment was not made until after the first day of November, and after he had reported the suspension. He further said that the money was left at his home "maybe two weeks or not so long" before Jackson's death, which is admmited to have occurred on the twenty-fifth day of November. The plaintiff made no effort to show by the member of her family who paid the money, or otherwise, that it was left at the home of the clerk on or before the first day of November. His testimony is uncontradicted, and the court and jury should have accepted as true his statement as to the time of payment.

A section of the laws of the society with reference to re-instatement of a suspended member is as follows:

"Sec. 115. Should a suspended member personally appear and apply for re-instatement within three months from the date of his suspension and pay all arrearages, if in good health and is not addicted to the excessive use of intoxicants or narcotics, he shall be restored to membership and his beneficiary certificate again becomes valid as soon as said payment shall have been received and recorded by the clerk of his camp. If a delinquent member does not appear in person to pay his arrearages, he must send to the clerk a written statement on the official form furnished by the sovereign camp that he is in good health, and is not addicted to the excessive use of intoxicants or narcotics, as a condition precedent to reinstatement, and waiving all rights thereto if this said written statement shall be found to be untrue. No suspended member shall be reinstated until he has either appeared before the clerk in person, and paid his arrears and dues, or the clerk shall have actually received his written application for reinstatement, accompanied with all arrearages and dues. An attempted reinstatement shall not be operative or binding unless the member be in fact in good health at the time. If any of the representations or statements made by said applicant are untrue, then said payments shall not cause his reinstatement nor operate as a waiver of the above conditions."

It will be seen from a reading of this section that a suspended member, in order to accomplish his reinstatement, must pay all arrearages, he must be in good health at the time, and must either "appear before the clerk in person" or the clerk "shall have actually received his written application for reinstate-

ment." Now, the purpose of the latter provision is two-fold—
that the clerk may have an opportunity to observe in person
whether the applicant is in good health or have a written state-
ment from him to that effect, and that the clerk may know that
the attempted reinstatement is the act of the applicant himself,
and not the act only of some interested person seeking to bring
about the reinstatement. The wholesomeness of such a pro-
vision in the laws of a fraternal order is obvious. The burden
of proof was upon the plaintiff to show reinstatement of the
member. There is no proof at all tending to show that Jackson
either appeared in person before the clerk or furnished a written
application containing a statement as to good health. On the
contrary, the evidence is uncontradicted that neither of these pro-
visions was complied with. So there was a total failure of proof
on this point to sustain the verdict.

The court gave the following instruction over the objection
of appellant:

"The jury are instructed that, although they may find that
the said W. L. Jackson did not pay his dues on the day that the
same became due, still if they further find that they were after-
wards paid to and accepted by the clerk of the lodge, and that he
was the proper person to whom the same should be paid, and that
the same was by said clerk forwarded to the defendant, and by
them received and placed to the credit of said Jackson on ac-
count of said dues, then this action on their part would estop
them from setting up such failure to pay at the proper time as
a defense to this action."

This instruction was erroneous, in that it entirely ignored
all the provisions of the laws of the society, which formed a part
of the contract of insurance, with reference to method of rein-
statement of a suspended member; and also ignored the testi-
mony that the money was promptly returned. No estoppel was
worked by reason of the receipt of the money under these cir-
cumstances. Nor was appellant estopped, under the terms of
the contract, by receipt of the money from showing that the
suspended member was not in good health at time of the at-
tempted reinstatement. The laws of the society plainly so pro-
vide. 2 Bacon on Ben. Soc., § 385 C. It is true the court in-
structed, at the request of appellant's counsel, to the effect that

before Jackson could be reinstated he must have complied with all the requisite conditions, but the instruction quoted above was in direct conflict with this in telling the jury that appellant was estopped by acceptance of the money from insisting on these requirements and conditions.

Appellant introduced as a witness a physician who attended Jackson a few days before his death. He did not know how long Jackson had been ill, but stated his opinion to be, from the condition he found the patient in, that he had been sick about three weeks. No objection was interposed to this testimony of the physician, but appellant offered to prove by him that the plaintiff told him (witness) at the time that her husband had been sick about three weeks and, on objections of the plaintiff, this testimony was rejected. This testimony tended to establish the fact that Jackson was not in good health at the time of his alleged reinstatement, and should have been admitted. He died on November 25, 1901, of typhoid fever, and, according to this testimony, the plaintiff stated to the physician, a few days before death occurred, that he had then been sick about three weeks. This was an admission of plaintiff against her interest, and was competent evidence. If true, it brought the period of Jackson's last illness within the time the jury could have found from other evidence that the reinstatement was attempted, and tended to show that he was not then in good health.

Counsel for appellee contend that, according to the bill of exceptions, the appellant offered only to prove by the physician what "he was told as to W. L. Jackson's illness." They are mistaken about this. The bill of exceptions recites that appellant's counsel asked the physician to state "how long Mrs. Jackson said that the deceased had been sick when he first visited him," and that an objection to the question on motion of the plaintiff was sustained by the court. This does not appear in the transcript of the stenographer, but does appear in the bill of exceptions certified by the presiding judge, and must control.

The judgment is reversed, and cause remanded for a new trial.