SOVEREIGN CAMP WOODMEN OF THE WORLD *v.* ANDERSON.

Opinion delivered April 1, 1918.

1. INSURANCE—FRATERNAL ORDER—CONSTITUTION AND BY-LAWS.— Where a certificate of insurance in a fraternal order makes the constitution and by-laws a part of the contract, the certificate holder is held to have notice of the provisions of the same, and to be bound thereby.

2. INSURANCE—FRATERNAL ORDER—LAPSE OF POLICY—KNOWLEDGE OF INSURED.—Where the certificate of insurance in a fraternal order, made the constitution and by-laws of the order a part thereof, and the constitution and by-laws provided that where a certificate lapsed for failure to pay dues, it could be reinstated only upon a statement,

among other things, by the insured that he was then in a good state of health, the insured is *held* to have knowledge of this regulation, and that therefore he could not have the certificate reinstated by a mere payment of dues, he, at the time, being a victim of consumption.

Appeal from Drew Circuit Court; *Turner Butler,* Judge; reversed.

*Rhoton & Helm,* for appellant.

1.   The clerk of the local camp had no authority to waive the laws of the society. Anderson could not be reinstated without filing the statement and warranty that he was in good health, nor at a time when he was sick with pulmonary tuberculosis. The society had no knowledge of the payment of assessments or attempt to reinstate until after his death. The payments made were promptly returned. The society was not estopped.   81 Ark. 512; 80 *Id.* 419; 104 *Id.* 538.

2.   There was no waiver. The officers had no authority to waive.   104 Ark. 538; 125 *Id.* 119; 185 S. W. 786.

3.   A member must know the laws of his order and the powers of lodge officers.   104 Ark. 538.

*Henry & Harris* and *Robert C. Knox,* for appellee.

1.   The knowledge of an agent acting within the scope of his agency is such knowledge as will bind the society.   129 Ark. 450; 130 *Id.* 128.   The act of Carroll, the local clerk, in accepting the dues of deceased with full knowledge of all facts estops the society. This case falls squarely within 111 Ark. 435 and is governed by it.

2.   Forfeitures are not favored.   113 Ark. 174; 94 *Id.* 417.

The cases cited by appellant do not apply here.

SMITH, J.   There appear to be no disputed questions of fact in this case, and, if any controversy existed, it has been resolved in favor of appellee by the court, which sat as a jury, and, upon the finding made, rendered judgment against appellant.   These facts are as follows: Ralfe A. Anderson, Jr., held a beneficiary certificate in the ap-

pellant order for $1,000, payable to his mother. His dues or assessments were payable monthly. He failed to pay the dues for the month of May and was automatically suspended as a member on June 1, 1916. A. W. Carroll was the clerk of the local camp of which the insured was a member and in his regular monthly report to John T. Yates, who was the supreme clerk of the defendant order, on June 15, 1916, an official report of this suspension was made. So far as the Sovereign Camp was informed or advised, no further action was taken in regard to this certificate until February, 1917, at which time the Sovereign Clerk received from Carroll a letter containing the dues or assessments from and including the month of forfeiture to the time of the insured's death. The letter from Carroll also contained notification of the insured's death. This remittance was promptly returned, upon the ground that the insured was not a member of the order at the time of his death. Suit was brought to enforce the payment of the sum named in the beneficiary certificate, and at the trial, Carroll testified that the father of Ralfe Anderson applied to him on the 19th day of August, 1916, to have the suspended member reinstated and at that time he paid to him all of the delinquent assessments. The father requested Carroll to notify him of the amount of any subsequent assessments and the time when the same would become due, and Carroll did this, and the insured's father promptly paid to Carroll the subsequent dues. None of these dues, however, were remitted to the company until two months after the insured's death. It was shown and not denied that at the time the policy lapsed the insured had consumption, and that he died from that disease on December 2, 1916.

The beneficiary certificate expressly made the application for the certificate and the constitution and by-laws of the order a part of the contract of insurance. Section 109 (a) of the constitution and by-laws provide for the payment of one annual assessment, or the payment of this assessment in monthly installments, and the payments

were to be made to the clerk of the local camp of which any insured was a member. Paragraph (b) of Section 109 of the constitution and by-laws provides that "if he fails to make any such payment on or before the first day of the month following, he shall stand suspended and during such suspension his beneficiary certificate shall be void." Other material sections of the constitution and laws of the society read as follows:

"I.   Section 115 (b): 'After the expiration of ten days and within three months from date of suspension of a suspended member, to reinstate he must pay to the clerk of his Camp all arrearages and dues and deliver to him a written statement and warranty signed by himself and witnessed, that he is in good health and not addicted to the excessive use of intoxicants or narcotics as a condition precedent to reinstatement, and waiving all rights hereto if such written statement and warranty be untrue."

"II.   Section 115 (c) : 'Any attempted reinstatement shall not be effective for that purpose unless the member be in fact in good health at the time, and if any of the representations or statements made by said applicant are untrue, then said payments shall not cause his reinstatement nor operate as a waiver of the above condition."

"Section 118 (a) :  'No suspended member shall be reinstated whose health is at the time impaired."

No attempt was made to show that any certificate or written statement was furnished to the clerk of the local Camp that the insured was in good health at the time of the attempted reinstatement, and it is conceded that no such statement could have been made, because it would have been palpably false. Indeed, Carroll, the clerk of the local camp, testified that he knew the condition of the insured when the insured's father applied for his reinstatement, and that he inquired at the time concerning his health.

It is argued that the decision of this court in the case of *Peebles* v. *Columbian Woodmen*, 111 Ark. 435, announces the principle of law which is applicable here and

which supports the finding of the court below that the beneficiary certificate was a valid subsisting contract at the time of the death of the insured. It is urged that Carroll represented the order in the transaction which led to the reinstatement of the insured, and that any knowledge which he had would be imputed to the insurance company. But we can not agree with counsel that the doctrine of the Peebles case, *supra*, applies here. There, the facts were that the local representative of the insurance company was charged with the affirmative duty of ascertaining whether the insured was in good health before delivering the policy, and we held, therefore, that a delivery of the policy to the insured by that officer would be held to be an ascertainment of that fact by the company. Prior to the discharge of this duty by the representative of that camp, Peebles was not a member of the order. It took this action to make him a member of the order, and the action of the local representative in delivering the certificate made him a member of the order. Here, however, Anderson was a member of the order at the time his certificate lapsed. He was charged with notice of the provisions of the constitution and by-laws and was bound by these provisions. As seen from section 115 (c) set out above, the reinstatement was not effective unless the member was in fact in good health at the time, and it is there expressly provided that the making of the statement, had one been made, and the payment of the dues should not operate as a waiver if the statement was in fact false. This section 115 is set out in the opinion of this court in the case of *Woodmen of the World* v. *Jackson*, 80 Ark. 422, and that section, as it then existed, is not substantially different from the section as it appears in this record. In that case the jury had been instructed that although they might find that the insured did not pay his dues on the day they were due, yet, if they further found that they were afterwards paid to and accepted by the clerk of the lodge and that he was the proper person to whom the same should be paid and that the same were forwarded to the company,

and by it received and placed to the credit of the assured on account of the dues, that this action would estop the company from claiming the forfeiture by reason of the failure to pay the dues at the proper time. In condemning that instruction, it was there said: "This instruction was erroneous, in that it entirely ignored all of the provisions of the laws of the society which formed a part of the contract of insurance with reference to method of reinstatement of a suspended member, and also ignored the testimony that the money was properly returned. No estoppel was worked by reason of the receipt of the money under these circumstances, nor was the appellant estopped under the terms of the contract by receipt of the money from showing that the suspended member was not in good health at the time of the attempted reinstatement. The laws of the society plainly so provide. 2 Bacon on Benefit Society, Sec. 385-C. It is true the court instructed, at the request of appellant's counsel, to the effect that before Jackson (insured) could be reinstated he must have complied with all the requisite conditions, but the instruction quoted above was in direct conflict with this in telling the jury that appellant was estopped, by acceptance of the money, from insisting on these requirements and conditions."

In this case, the insured must be held to have known, at the time of his attempted reinstatement, what the requirements of the constitution and by-laws were, as these were made a part of the contract of insurance, and he must therefore be held to have known that any truthful statement of his condition would, under the section of the by-law quoted above, defeat his reinstatement. *Woodmen of the World* v. *Hall,* 104 Ark. 538; *Clinton* v. *Modern Woodmen,* 125 Ark. 119; *Pate* v. *Modern Woodmen,* 129 Ark. 159; *Cunningham* v. *National Americans,* 185 S. W. 786; *Mutual Aid Union* v. *Blacknall,* 123 Ark. 377. The insured was not reinstated and the judgment of the court below must therefore be reversed and the cause will be dismissed.