SOVEREIGN CAMP, WOODMEN OF THE WORLD, *v.* MAY.

4-4993

Opinion delivered March 28, 1938.

900

*Minor Pipkin* and *Howard Hasting,* for appellant.
*J. F. Quillin* and *Marvin J. Quillin,* for appellee.

McHANEY, J. Appellant issued its ten year term beneficiary certificate in the sum of $1,000 to James A. May under date of December 26, 1928, in which the appellee, his son, was named beneficiary. The premiums were payable monthly and the contract provided that each monthly payment should be due and payable on or before the last day of each month and for the remainder of the certificate year in which death occurred. It is also provided in this certificate that the articles of incorporation, the constitution, laws and by-laws of appellant and all amendments thereto, the application for membership, the medical examination and the certificate shall constitute the agreement between the member and appellant. Section 63 (b) provides that if the member fails to pay any monthly installment on or before the last day of the month in which it falls due, he shall automatically become suspended and his certificate shall be void. Section 65 provides for reinstatement of a suspended member for

nonpayment of assessments in that he may, within three calendar months, again become a member by the payment of all installments of assessments due, provided he be at that time in good health; but that the payment of all dues by any such suspended member shall be held to be a warranty that he is in fact in good health at the time and will remain so for thirty days thereafter. Section 66 provides that the retention by appellant of any installment of assessments paid by or for any member after he has become suspended shall not constitute a waiver of any of the provisions of the contract; and that any attempt of the suspended member to be reinstated shall not be effective unless such member shall be in fact in good health at the time and continue so for thirty days thereafter and again makes the payment of delinquent installments a warranty of that fact and if the warranty is not true, the certificate shall be null and void.

The deceased was a member of a camp at Mena, Arkansas, as was also his son, the appellee, Don F. May. Appellee paid the premiums on his own and his father's policy at the same time and had done so for several years. It is undisputed that a custom was established to pay the local clerk of the camp of which the deceased and appellee were members the dues at a time later than the last day of the month. It is also shown that it was the custom of the clerk of the local camp to date all of the receipts for dues as of the same date near the last part of the month for which the dues were payable, with a rubber stamp and if the dues were paid at any time prior to the mailing of the report of the clerk of the local camp to the head office in Omaha, the member was reported as having paid his dues and being in good standing. Appellee neglected to pay his own and his father's dues for the month of May, 1933, until on about the 10th day of June, at a time on said day after the local clerk had made up his report for the month of May and deposited same in the mail. The result was that he and his father stood delinquent on that report. He paid his own and his father's dues for the month of June within that month,

on or about the 28th day of June, and the June payment together with the previous payment for May were reported to the home office on or about the 10th day of July, which report reached the home office on the 13th day of July. After this report had been audited by the home office, it was discovered that the deceased had been reported as delinquent for the May premium or assessment and there being on file a report of previous serious illness in the nature of tuberculosis on the part of deceased, reinstatement of the deceased was declined and a refunding check was drawn payable to the order of James A. May and forwarded to the clerk of the local camp at Mena on July 25, 1933, with instructions to deliver to Mr. May. This refunding check was returned to appellant because Mr. May refused to accept it when tendered. On September 19, 1933, it was sent direct by letter of that date to Mr. James A. May. Thereafter, the refunding check was indorsed "James A. May by Don May" and cashed by Don May at the Union Bank of Mena, Arkansas, and the canceled check was introduced in evidence. Appellee admitted that he received the refunding check from appellant refunding the payment for the May and June, 1933, payments on his father's certificate, indorsed it as stated above, and used it to pay the premiums on his own certificate. No other payments were ever made or tendered by either the deceased, James A. May, or by the appellee. James A. May thereafter died on April 20, 1937, and appellee brought this action to recover the amount of the policy, less the premiums and interest he would thereafter have paid during that time. Trial resulted in a verdict and judgment for appellee.

Appellant insists that the verdict and judgment are contrary to the law and the evidence, and that the court erred in giving instructions Nos. 4 and 6, at the request of appellee.

We think the evidence was sufficient to show that appellee paid his father's premium within the time permitted by the custom established in that camp. We have

frequently held that even though the certificate, constitution and by-laws provided that the payment should be made within a certain specified time, but that a custom had been established to permit payment after that time, payment within the time established by the custom is a good and sufficient payment, and that the association may not abandon the custom without giving notice. In *Columbian Mutual Life Insurance Co.* v. *High,* 188 Ark. 798, 67 S. W. 2d 1005, we said: "We are, therefore, of the opinion that the evidence is sufficient to establish a custom of appellant to accept payment of premiums after the expiration of the grace period, both as fixed in the policy and as appellant says it permitted to the fraternal policyholders. At least, the evidence was sufficient to submit the question to the jury as to whether appellant had established such a custom." And again we said in the same case: "After such custom had been established, appellant could not change the custom and lapse the policy where payment was made within the customary time, without notice of its intention to abandon the custom." See, also, *Sovereign Camp, W. O. W.,* v. *Newsom,* 140 Ark. 132, 219 S. W. 759, 14 A. L. R. 903; *Sovereign Camp, W. O. W.,* v. *Condry,* 186 Ark. 129, 52 S. W. 2d 638.

Here, it is undisputed that such was the custom, but appellant says that appellee did not pay within the customary time. We cannot agree. The evidence on the part of appellant itself shows that on the very day the report was sent in, but after the mailing thereof, the appellee paid his own and his father's dues. It occurs to us that the clerk should have sent a supplemental report showing that the insured had paid his premium that day as did the appellee, on his own policy. At least, this evidence was sufficient to take the case to the jury on the question of whether appellee had paid his father's premium within the customary time.

As to instructions Nos. 4 and 6, about which complaint is made, we think no error was committed in giving instruction No. 4, but we are of the opinion that instruction No. 6 was erroneous. It reads as follows: "If you

find that the insured paid to the defendant's agent the premium for May, 1933, and that such payment was accepted by the defendant association in settlement of the premium for said month, then you are told that such acceptance would prevent the association from claiming a forfeiture because of any failure of the insured to pay said premium by the time specified in the by-laws. In determining whether the defendant actually accepted the said premium, you may take into consideration the length of time, if any, which the same was held by the defendant before refund was made to the insured.''

A similar instruction, one to the same effect, was condemned in *W. O. W.* v. *Jackson,* 80 Ark. 419, 97 S. W. 673, where it was said: ''This instruction was erroneous, in that it entirely ignored all the provisions of the laws of the society, which formed a part of the contract of insurance, with reference to method of reinstatement of a suspended member; and also ignored the testimony that the money was promptly refunded. No estoppel was worked by reason of the receipt of the money under these circumstances. Nor was appellant estopped, under the terms of the contract, by receipt of the money from showing that the suspended member was not in good health at the time of the attempted reinstatement.

''It is true that the court instructed, at the request of appellant's counsel, to the effect that before Jackson could be reinstated he must have complied with all the requisite conditions, but the instruction quoted above was in direct conflict with this in telling the jury that appellant was estopped by acceptance of the money from insisting on these requirements and conditions.''

While instruction No. 6 does not use the word ''estop,'' it means the same thing. It was, therefore, error on the part of the trial court to give said instruction which entirely ignored all of the provisions of the laws of appellant with reference to the reinstatement of a suspended member, and was inherently wrong, and, therefore, open to a general objection.

Another matter deemed worthy of mention in this connection, in view of another trial, but which has not

been discussed by appellant nor relied upon for a reversal of this case, is the effect of the acceptance of the refund of the May and June premiums paid by appellee, and the use of them for his own purposes. The fact that appellee accepted said check, cashed it and used it for his own purposes is very cogent if not conclusive evidence of the fact that he adopted appellant's construction of the contract in suspending his father for the nonpayment of the May premium and estopped himself from insisting to the contrary. The fact is, according to this record, that he cashed that check in September, 1933, and used it to pay his own premium. Never after the June payment was made, so far as this record discloses, did he tender to the camp clerk any further sum in payment of his father's premiums. He testified that he stood ready, willing and able to do so. This matter should be taken into consideration upon a retrial of this case.

For the error in giving instruction No. 6, the judgment will be reversed and the cause remanded for a new trial.