WOODMEN OF THE WORLD LIFE INSURANCE COMPANY v.
GARNER.

4-5970 140 S. W. 2d 414

Opinion delivered May 20, 1940.

*Rainey T. Wells* and *Ohmer C. Burnside,* for appellant.

*W. W. Grubbs,* for appellee.

McHANEY, J. Appellee is the widow of Andrew J. Garner and beneficiary in a certificate of life insurance issued by appellant to him for $1,000. The insured died on April 30, 1939, with all premiums and dues fully paid. Proof of death was promptly made, but appellant denied liability, and this action was brought to recover on said policy or certificate. Appellant answered admitting the issuance of the contract and the payment of all premiums, but denied liability on the ground that certain of the monthly premiums were not paid in the time provided in the constitution, laws and by-laws, which, together with the certificate, constituted the contract, and that their subsequent payment, at a time when the insured was in bad health, did not reinstate the policy.

Trial before the court without a jury resulted in a judgment for appellee for $953.93, which sum is the correct amount appellee is entitled to recover, if at all, on account of an irregularity in the age of the insured as stated in the face of the policy.

Section 63 of the constitution, laws and by-laws provides that the insured shall either pay one annual payment in advance .each year to the Financial Secretary of his camp or one monthly installment thereof on or before the first day of each calendar month, and that, ''if he fails to make any such payment on or before the last day of the month, he shall thereby become suspended, his beneficiary certificate shall be void, the contract between such person and the Society shall thereby completely terminate . . .'' Sections 65 and 66 read as follows:

''Section 65. Any person who has become suspended for not making any annual payment or install-

ment thereof may within three calendar months from the date of his suspension again become a member of the Society by the payment of the delinquent installment or installments, provided he is in good health at the time of such payment and remains in good health for thirty days thereafter.

"Whenever installments of payments are paid by or for a person who has become suspended for the purpose of again making him a member, such payment shall be held to warrant that he is at the time of making such payment in good health, and to warrant that he will remain in good health for thirty days after such attempt to again become a member, and to contract that such installments when so paid after he has become suspended for not making payments shall be received and retained without waiving any of the provisions of this section or of these laws until such time as the Secretary of the Society shall have received actual, not constructive or imputed, knowledge that the person was not in fact in good health when he attempted to again become a member. Provided, that the receipt and the retention of payment of such installments in case such person is not in good health shall not make such person a member or entitle him or his beneficiary or beneficiaries to any rights whatever.

"Section 66. (a) The retention by the Society of any installment paid by or for any person after he has become suspended in order to again make him a member shall not constitute a waiver of any of the provisions of this constitution, laws and by-laws, or an estoppel upon the Society.

"(b) Any attempt by a suspended person to again become a member shall not be effective for that purpose unless such person be in fact in good health at the time and continue in good health for thirty days thereafter, and the payment of any unpaid installment shall be a warranty that such person is at the time in good health and that if the warranty is not true the certificate shall be null and void."

The undisputed facts, relative to the monthly payments made by or for Andrew J. Garner, are that all monthly payments for 1938 and 1939 were made in apt time, except in four instances. The May, 1938, payment was not made until June 30, and the July, 1938, payment was not made until August 18, the January, 1939, payment was not made until February 28, and the February, 1939, payment was not made until March 30. The March, 1939, payment was made March 30, and the April payment was made April 28, two days before his death. It is also undisputed that Andrew J. Garner had been afflicted with a heart disease, angina pectoris, from 1934 to his death, from which disease he died. He was, therefore, not in good health when the four monthly payments, as above stated, were not made within the months in which they became due and payable, but were made in the succeeding months as stated, with the full knowledge of the Financial Secretary of his camp that the insured was not in good health at the times said delinquent payments were made. Said payments were all remitted to the home office of appellant, and were received and accepted by it, and were kept by it. When demand was made on it to pay this loss, it refused to do so, but tendered its check for $6.96 to cover premiums received by it for January to April inclusive, 1939. With its answer, it tendered all payments made by insured from February, 1938, to April, 1939, inclusive, in the sum of $26.10, although subsection (b) of § 63 provides that it may keep all payments.

We think the trial court was correct in holding that Andrew J. Garner did not become a suspended member by reason of the irregularity of payments in the four instances above mentioned and that he did not make the payments subsequently "for the purpose of again making him a member." The second paragraph of § 65, above quoted, is conditioned as follows: "Whenever installments of payments are paid by or for a person who has become suspended for the purpose of again making him a member, such payment shall be held to warrant," etc. Now, if Mr. Garner did not "become suspended," the payments made by him, although out of time, were

not made "for the purpose of again making him a member," and all the remainder of that part of § 65 has no application. If not suspended, he never ceased to be a member. He was not suspended because he was never treated as a suspended member by either the Financial Secretary or the Home Office. He was never so advised. His money was accepted regularly or irregularly and no one connected with appellant ever advised that his payments were made merely for the good of the order. It has many times been held that the "money changer," Financial Secretary in this instance, is the agent of the Society and that his knowledge is its knowledge. *Sovereign Camp, W. O. W.*, v. *Newsom,* 142 Ark. 132, 219 S. W. 759, 14 A. L. R. 903, is one of the leading cases in our reports. Appellant has tried to avoid this rule of law by a provision in the latter part of said § 65 and the provision contained in subsection (a) of § 66, the former relating to what shall constitute a waiver, and the latter relating to both waiver and estoppel. Appellant cannot thus relieve itself of the burdens of a positive rule of law by an *ex parte* declaration in its constitution, laws and by-laws, stating the conditions under which it will be relieved by waiver and estoppel. It would appear to be as much against public policy as it would for a railroad to contract against its own negligence, or that of its officers and agents.

In *Mutual Aid Union* v. *Blacknall,* 129 Ark. 450, 196 S. W. 792, it was said: "It is the doctrine of our cases that, notwithstanding such recitals in an application or policy, an insurance company is bound by the conduct of its soliciting agent acting within the apparent scope of his authority. Any knowledge or information coming to him during the course of his employment as such agent will bind his principal, the society."

Appellant has been a frequent litigant in this court and cites and relies on four cases wherein it was appellant, *Woodmen of the World* v. *Jackson,* 80 Ark. 419, 97 S. W. 673; *Sovereign Camp, W. O. W.*, v. *Anderson,* 133 Ark. 411, 202 S. W. 698; *Sovereign Camp, W. O. W.*, v. *Barnes,* 154 Ark. 486, 243 S. W. 55; and *Sovereign Camp, W. O. W.*, v. *May,* 195 Ark. 899, 114 S. W. 2d 1068. None

of these cases is in point here. We think the case is ruled adversely to appellant by the Newsom case, *supra,* and cases following it. To permit it to keep the money paid as premiums for 1938 and 1939 until sued and then to say it did not know the member was ill, although its agent knew it, offer to make restitution thereof and thereby escape liability would be a departure from all our former decisions and a gross miscarriage of justice.

Affirmed.