WOODMEN OF THE WORLD LIFE INSURANCE SOCIETY
v. BOWIE.

5-279                                    264 S. W. 2d 632

Opinion delivered February 15, 1954.

*William H. Donham,* for appellant.

*Francis T. Donavan* and *George F. Hartje,* for appellee.

MINOR W. MILLWEE, Justice. This appeal is from a judgment for $2,000 in favor of appellee, Effie A. Bowie, in an action on a 20-year pay life insurance policy issued by the appellant to appellee's son, Bun W. Bowie, who died May 1, 1949. Appellant defended the action on the ground that the policy expired April 1, 1949, for non-payment of premium and was not in effect when Bowie died. This was the sole issue presented to the trial court, sitting as a jury, under a state of facts which were for the most part stipulated and are to the following effect.

The policy or certificate in question was issued to Bowie, a member of appellant's Wright, Arkansas, camp on January 1, 1949. Bowie elected to pay his premiums upon a monthly basis and paid the premiums for January and February, 1949. On February 15, 1949, Bowie became ill and disabled with cancer of the lung which caused his death on May 1, 1949. On April 20, 1949, J. C. Noggles paid the premiums and camp dues on the policy for the months of March and April, 1949, to H. A. Archer, Financial Secretary of the Wright, Arkansas, Camp, who executed and delivered a receipt for the payment. At the time of the payment of the March and April premiums and dues, Archer knew that Bowie was ill and in the hospital at Conway, Arkansas, but did not know the nature of his ailment. Archer also testified that if a policy lapsed it was the policy of appellant company to accept delinquent premiums and dues for a period of one or two months and sometimes longer and reinstate the policy. Archer did not notify appellant's National Secretary of the illness of Bowie at the time he accepted the premiums nor did he notify appellant later. Appellant's National Secretary had no actual knowledge of Bowie's illness prior to his death and stated that Archer was unauthorized and forbidden to waive any of the provisions of the constitution laws and by-laws of the society. Appellant required all premium payments to be made to the local financial secretary.

On May 27, 1949, proof of death was duly made. On July 8, 1949, appellant denied liability in a letter to ap-

pellee and tendered a refund of the premiums paid April 20, 1949, which tender was rejected.

According to appellant's constitution and by-laws, which were incorporated into the policy by the terms thereof, if the premium was not paid when due on the first of the month, then on the last day of the month the policy terminated. The policy further provided that after 15 days from suspension and within 3 months thereof, the policy could be reinstated by the payment of all delinquent premiums, and that such payment would be received and retained by the Society without waiving any of the provisions requiring good health of the insured as a prerequisite to reinstatement until such time as the secretary of the Society should have received actual, not constructive or imputed, knowledge that the suspended member was not in fact in good health when he attempted to reinstate his certificate. The policy also provided that payment of the delinquent premiums after the policy had been suspended for more than 15 days should be held to be a representation on the part of the insured that he is in good health at the time of the payment; and that if such representation is not true, the policy was voided. Section 127(a) of the constitution provided that no officer, employee or agent of the society had authority or power to waive any of the reinstatement provisions.

In holding that the policy was in force and effect at the time of Bowie's death, the trial judge rendered a well considered opinion in which he made extensive findings of fact and conclusions of law. The court first stated that the question of waiver of the condition of reinstatement by the local camp secretary would not be considered in view of Ark. Stats., § 66-3310, which provides that the constitution and by-laws of a fraternal benefit society may prohibit the waiving of such provisions by any subordinate officers. This holding is in accord with the decision in the leading case of *Sovereign Camp W. O. W.* v. *Newsom*, 142 Ark. 132, 219 S. W. 759, 14 A. L. R. 903, where the court, in giving effect to the statute, nevertheless held that the doctrines of estoppel was applicable and judgment for the insured was affirmed. In that case

the court reaffirmed the rule followed in many subsequent cases to the effect that in the matter of collecting and reporting premiums and dues the local camp clerk is the agent of the society and that the latter is liable for such conduct of the clerk as would estop the society from denying that dues were paid as required by the constitution and by-laws.

In reaching the conclusion that appellant was estopped from denying reinstatement in the instant case, the trial court found: "Based upon the universal holding that the soliciting camp secretary is the agent of the Society and that the Home Office is charged with the camp secretary's knowledge, then when Archer collected and accepted the delinquent dues from Bowie, or from Noggles for Bowie, with a knowledge that Bowie was sick and in a hospital, then the Society was chargeable with Bowie's illness, constructively, at least, and if it ignored the illness of Bowie, retained the dues, did not advise Bowie of his suspensions, if any occurred, and Bowie continued on to his death under the belief that he was a member in good standing and that he contributed in no wise to mislead the defendant society, then if such occurred and the court finds such to have been the facts, then defendant would be estopped to plead a forfeiture of the policy for a failure upon the part of Bowie, to affirmatively prove and establish his health condition. So the court accepts the legal principles of law included in the cases cited by the defendant, as well as the laws, by-laws and constitution of the Society as being legal and enforceable, but holds that by the habit, custom and conduct of defendant and its camp secretary in the acceptance of the delinquent dues, in not advising the insured of a suspension, or of indicating his suspension with a knowledge of his illness, it is estopped to plead a forfeiture of the policy. . . . The knowledge of the pending illness of Bowie, by Archer, as Camp Financial Secretary, of defendant Society, at the time the delinquent dues for March and April were collected and retained is controlling on the question of estoppel."

The court based its decision on the Newsom case, *supra,* and the cases of *Sovereign Camp W. O. W.* v. *Pearson,* 155 Ark. 328, 244 S. W. 344; *Order of Railway Conductors of America* v. *Skinner,* 190 Ark. 116, 77 S. W. 2d 793; and *Woodmen of the World Insurance Co.* v. *Garner,* 200 Ark. 696, 140 S. W. 2d 414. In the Newsom case the court said: ''The principle of estoppel in equity stands upon the very foundation of right and fair dealing. It considers and weighs the conduct of men in their dealings with each other, and gives that effect and meaning to their actions which common sense and justice dictate. A fraternal insurance association, such as appellant, is as much subject to the operation of its principles as any other association of persons or as an individual.'' See also *Libbey* v. *Haley,* 91 Me. 331, 39 Atl. 1004.

''In 2nd May on Insurance, § 361, it is said that, 'Forfeitures are so odious in law that they will be enforced only where there is the clearest evidence that such was the intention of the parties. If the practice of the company and its course of dealings with the insured and others known to the insured have been such as to induce a belief that so much of the contract as, provides for a forfeiture in a certain event will not be insisted on, the company will not be allowed to set up such a forfeiture, as against one in whom their conduct has induced such belief.'

''This doctrine of equitable estoppel is as applicable to fraternal societies as to old line companies.''

The above language was also approved in the Pearson case where the company defended on the same ground that is interposed here and the evidence showed that a general custom had been established in the local camp of allowing members in arrears to be reinstated by paying delinquent dues without complying with the requirements of the by-laws for reinstatement, just as in the case at bar.

In the Garner case, after referring to the Society's attempt to avoid the rule of estoppel announced in the Newsom case by provisions in its constitution and by-laws, the court said: ''Appellant cannot thus relieve it-

self of the burdens of a positive rule of law by an *ex parte* declaration in its constitution, laws and by-laws, stating the conditions under which it will be relieved by waiver and estoppel. It would appear to be as much against public policy as it would for a railroad to contract against its own negligence, or that of its officers and agents."

It is true that the facts in the instant case are not identical with those in the above mentioned cases nor in the following cases upon which appellant relies for a reversal: *Sovereign Camp W. O. W.* v. *Anderson,* 133 Ark. 411, 202 S. W. 698; *Deloach* v. *Ozark Mutual Life Insurance Co.,* 148 Ark. 414, 230 S. W. 268, 14 A. L. R. 921; *Sovereign Camp W. O. W.* v. *Barnes,* 154 Ark. 486, 234 S. W. 55; *Modern Woodmen of America* v. *Seargent,* 188 Ark. 1098, 69 S. W. 2d 397; and *Hohenschutz* v. *Knights of Columbus,* 208 Ark. 358, 186 S. W. 2d 177. It is also true that conflicting results have been reached in some of these cases and it would serve no useful purpose to differentiate the facts in the numerous cases bearing on the issue. However, in those cases in which the doctrine of estoppel has been considered and applied, there is a uniform holding that the local secretary of a fraternal benefit society, like the soliciting agent of an old line c o m p a n y , is the agent of the society and that the latter is responsible for his knowledge, conduct and acts within the apparent scope of his authority regardless of contrary provisions in the constitution and by-laws of the society.

After careful examination and consideration of the numerous cases bearing on the difficult question presented, the trial court concluded that appellant was estopped from denying reinstatement and setting up a forfeiture of the policy. In our opinion the undisputed evidence is substantial and sufficient to sustain this conclusion, and the judgment is affirmed.

Justice GEORGE ROSE SMITH dissents.